IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL B. TYGER, | Civil Action |
| Plaintiff, | No. 2:24-cv-203 |
| vs. | |
| HAMPTON MECHANICAL, INC., | |
| Defendant. | JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff Russell B. Tyger, by undersigned counsel and pursuant to Fed.R.Civ.P. 3 files this Civil Complaint and in support states the following.

### I. Jurisdiction

1. Plaintiff invokes the jurisdiction of the Court pursuant to 28 U.S.C. §1331.

### II. The Parties

2. Plaintiff Russell B. Tyger is an adult individual who resides in Mt. Pleasant, Westmoreland County, Pennsylvania 15666.

3. Defendant Hampton Mechanical, Inc., is a Pennsylvania corporation with its principal place of business located at 4720 Highpoint Drive, Gibsonia, Allegheny County, Pennsylvania 15044. At all times relevant, Defendant was Tyger's employer, and an employer, within the meaning of 29 U.S.C. 2611(4)(A)(i).

4. Defendant employed more than fifty employees for each working day for at least 20 weeks during 2023 and 2022.

### III. Factual Background

5. Tyger worked for Defendant from August 28, 2017, as a Senior Project Manager, and in 2022 was promoted to Procurement Manager.

6. Tyger performed his work duties in a manner fully acceptable to his employer.

7. Tyger was a participant in Defendant's employee health insurance plan.

8. Defendant's health insurance plan is an Employee Welfare Benefit Plan within the meaning of the Employee Retirement Income Security Act, ("ERISA") 29 U.S.C. §1002(1)(A).

9. On or about August 9, 2023, Tyger was diagnosed with prostate cancer.

10. On or about October 13, 2023, he underwent radical prostatectomy surgery.

11. He took three days of sick time to recover from the surgery and returned to remote work on October 18, 2023.

12. On December 4, 2023, Tyger was called to a meeting with Jason Boyd, Defendant's President; Stephanie Headley, Defendant's Human Relations Manager; Josh Mastele, Defendant's Vice Present of Construction, Tyler Fatigante, Defendant's Director of Operations, and Dwayne Wilson, Defendant's Vice President of Estimation.

13. President Boyd began the meeting by requiring Tyger to inform everyone where he was in his cancer recovery process after the October 13 surgery to remove his prostate.

14. Boyd then began to criticize Tyger for failing to communicate with people during the time of his recovery from cancer surgery–the first time such a statement had been made to Tyger during his entire employment.

15. Boyd's accusation was untrue. Tyger had answered every phone call, text and email and had been actively managing his projects remotely during his recovery from surgery.

16. On December 15, 2023, Tyger informed Boyd that his doctor had just told him that his cancer had spread, and he was in stage 4. Tyger informed Boyd that he did not yet know the treatment or prognosis.

17. Three days later, on December 18, 2023, Boyd informed Tyger that due to the costs of Tyger's and another employee's cancer treatment incurred on the company's healthcare plan, Defendant would sustain a 25% or $100,000 increase in health insurance premiums.

18. He instructed Tyger to find another healthcare plan on the Affordable Care Act Marketplace so he could be removed from Defendant's company plan.

19. Tyger informed Boyd that he had a scheduled specialized PET scan for January 2, 2024, which had been pre-authorized under the current Company plan insurance. Tyger likewise informed Boyd that this test was to determine where the cancer had metastasized and could not be delayed.

20. Boyd continued to insist that Tyger get off the Company's health insurance plan by the end of the year. Tyger did not do so.

21. On January 3, 2024, following a PSMA Pet Scan, Tyger learned that his cancer had metastasized to his lungs, spine, hip, and lymph nodes. On that date, he notified Boyd.

22. The following week, on January 8, 2024, during a meeting with Boyd and Ms. Headley, Defendant's Human Relations Manager, Tyger was questioned about the status of his getting off the Company health care plan.

23. During this meeting, Tyger explained that he was unable to qualify for a comparable private plan due to his and his wife's preexisting conditions and requested that Defendant allow him to remain on its health care plan.

24. Boyd again told Tyger that Defendant could not qualify for another healthcare plan due to his and the other employee's cancer costs being so high. Boyd said the insurance broker was paying out more than it was billing Defendant due to those costs.

25. Ms. Headley then instructed Tyger to take unpaid FMLA leave as soon as possible for three months and then retire. She complained that this would cause her a lot of paperwork.

26. Tyger requested that rather than be involuntarily placed on unpaid leave, that he take intermittent leave resulting in a reduced workweek, and compensation.

27. Ms. Headley informed Tyger that Defendant did not permit "part-time" or "remote" work, although Tyger had been working remotely during his recovery from the October surgery and had successfully kept his projects operating efficiently.

28. Boyd then also suggested Tyger retire, and when Tyger declined, Boyd then questioned whether Tyger would be better off leaving to be with his family.

29. When Tyger again declined to resign, or take unpaid leave, Defendant instructed him to move out of his office to a much smaller office.

30. Two weeks later, on or about January 25, 2024. Tyger was again called into a meeting with Boyd, and Ms. Headley the HR Manager.

31. During the meeting Defendant informed Tyger that he was being "permanently laid off" and offered a release agreement.

32. On or about February 1, 2024, Tyger informed Boyd that he declined to voluntarily resign and release Defendant, as Defendant had proposed.

33. Tyger informed Defendant that he had a doctor's appointment on February 2, 2024, and that he could not determine if he would release Defendant from any liability until speaking with an attorney and talking with his treating physician.

34. On February 2, 2024, Defendant fired Tyger, effective at the end of the day, claiming there was a lack of work.

35. During a January 2024 conversation Boyd admitted he was attempting to remove Tyger from the Company insurance plan due to the high medical costs his cancer treatment was placing on the plan.

36. Despite Defendant's claim that there was a lack of work, Defendant hired a new Senior Project Manager, Jeff Horvat in December 2023.

## Count I
## ERISA–Section 510

37. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 36 as if fully restated herein.

38. Defendant's health plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act.

39. Defendant fired Tyger for the purpose of interfering with the attainment of rights under its employee benefit plan in violation of ERISA Section 510, 29 U.S.C. §1140.

40. As a direct and proximate result of Defendant's violation of ERISA Section 510, Tyger has suffered damages, including but not limited to lost wages, lost benefits, and attorney fees and costs.

WHEREFORE, Tyger demands judgment against Defendant and the following relief.

    a. Lost wages and benefits;

    b. Equitable relief in the form of reinstatement or front pay;

    c. Reasonable attorney fees and costs, and

    d. Such other relief as the Court may deem to be just and proper.

## Count II
## FMLA: Interference and Retaliation

41. Plaintiff incorporates the allegations in Paragraphs 1 through 40 as if fully restated herein.

42. Tyger worked for Defendant for more than 1250 hours in the twelve months preceding his discharge, and as such, was an eligible employee under the Family and Medical Leave Act ("FMLA").

43. Tyger suffered a serious health condition that required him to undergo both hospitalization and ongoing medical care.

44. In and around January 8, 2024, Tyger requested intermittent medical leave in the form of a reduced part time or remote work schedule while he was undergoing cancer treatment.

45. Despite Tyger's request for leave to treat his cancer, Defendant did not provide Tyger with individual notice of his intermittent FMLA leave rights in contravention of 29 C.F.R. §825.300(b)(1), and violation of 29 U.S.C. §2615(a)(1).

46. Specifically, Defendant did not, within five days of January 8, 2024, notify Tyger of his eligibility to take intermittent FMLA leave, in contravention of 29 C.F.R §825.300(b)(1).

47. Defendant did not notify Tyger, in writing, whether his part time or remote work scheduled leave would be designated as intermittent FMLA leave in contravention of 29 C.F.R. §825.300(d)(1).

48. Defendant did not provide Tyger with written notice detailing his obligations under the FMLA and explaining the consequences for failing to meet those obligations. 29 C.F.R. §825.300(c)(1).

49. Defendant did not notify Tyger of the specific amount of time because of his reduced work schedule that would be counted against his intermittent FMLA leave entitlement, in contravention of 29 C.F.R. 825.300(d)(6).

50. Defendant did not notify Tyger of any conditions applicable to his intermittent medical leave request, including, among other things, how many hours per week it would count

6

against his 12-week FMLA entitlement, and such failure of Defendant to do so contravened 29 C.F.R. 825.300(c)(1).

51. Had Defendant provided the required notice and information to Tyger, he could have known he was entitled to take intermittent leave in increments as little as one hour, and that he would not be subjected to work mandates during that leave, and that he was entitled to not work during leave.

52. Defendant interfered with, restrained, and denied Tyger the exercise of his rights to intermittent FMLA leave by engaging in the above course of conduct all in violation of 29 C.F.R. §2615(a)(1).

53. Defendant fired Tyger to prevent him from taking FMLA-protected intermittent leave in violation of 29 U.S.C. §2612(a)(1).

54. Defendant also fired Tyger in retaliation for his previous exercise of FMLA-protected leave, in violation of 29 U.S.C. §2612(a)(1).

55. Defendant's violation of the FMLA was undertaken in bad faith and without reasonable grounds to believe that its acts did not violate the FMLA.

56. As a direct and proximate result of Defendant's violation of the FMLA, Tyger has sustained damages, including lost wages and benefits.

57. As a direct and proximate result of Defendant's violations of the FMLA, Tyger has suffered and continues to suffer damages, including, but not limited to, lost wages, benefits, and seniority.

WHEREFORE, Plaintiff hereby requests judgment, pursuant to 29 U.S.C. §2617(a), and the following legal and equitable remedies:

a. Defendant be ordered to employ and re-employ Tyger in the position from which he was discharged, together with all benefits incident thereto, including but not limited to, wages, benefits, training, and seniority;

b. Defendant be required to compensate Tyger for full value of wages and benefits that he would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest at the prevailing rate thereon until the date Plaintiff is offered re-employment in a position substantially equivalent to the one Plaintiff occupied prior to February 2, 2024;

c. Defendant be required to provide Plaintiff all other compensation, including but not limited to health insurance, bonuses, 401k and profit sharing, which was denied or lost to Plaintiff as a result of Defendant's illegal treatment of Tyger;

d. That a final judgment in favor of Tyger and against Defendant be entered for Tyger for liquidated damages, as provided by 29 U.S.C.§2617(a)(1)(A)(iii), in an amount equal to the wages, benefits, and other compensation denied or lost to Tyger;

e. That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the FMLA;

f. That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney's fee; and

g. That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted,

**Samuel J. Cordes & Associates**

/s/ *Samuel J. Cordes*
Samuel J. Cordes
Pa.I.D. #54874
267 Sweet Gum Road
Pittsburgh, PA 15238
(412) 519-4663
Sjcordes@sjcemploymentlaw.com

Attorney for Plaintiff